# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-24093-GAYLES

PAMELA L. TAYLOR,

    Plaintiff,

        v.

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [ECF No. 42]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is denied.

## BACKGROUND

On October 9, 2017, while a passenger on Defendant's ship, the *Anthem of the Seas*, Plaintiff participated in the Ripcord by iFly activity (the "iFly"). Defendant's Statement of Undisputed Material Facts ("Def. SOMF") ¶ 2 [ECF No. 42]. During the iFly, a passenger floats, with the assistance of an instructor, in a skydiving position in a large clear tube with recirculating wind. *Id.* ¶ 3. To participate, passengers must execute a waiver. *Id.* ¶ 4. The *Anthem of the Seas*' iFly area displays various warnings, including that the iFly is an "extreme" activity and that participants must disclose prior medical conditions before participating. *Id.* ¶ 6. Plaintiff signed a waiver and watched an instructional video about the iFly before participating. *Id.* ¶¶ 7, 8, 9.

Before entering the iFly, Plaintiff received additional instruction and was provided with a suit, goggle, earplugs, and a helmet. *Id.* ¶ 14. Renato Xerez ("Xerez"), an employee of Defendant,

was Plaintiff's instructor.[1] A few seconds into the one-minute flight, Plaintiff felt Xerez pulling and bending her left arm. *Id.* ¶ 20. In video footage, Xerez is seen holding Plaintiff's left arm at various times during the flight. *Id.* ¶ 21.

After exiting the iFly, Plaintiff was able to remove her helmet and move her left arm to some degree. *Id.* ¶¶ 23, 24; Plaintiff's Statement of Material Facts ("Pl. SOMF") ¶ 24, [ECF No. 56]. Plaintiff contends that she felt some pain in her left arm after her flight but did not report this pain to Defendant's staff in the area. Def. SOMF ¶ 31. A few hours later, while attempting to take down curlers from her hair, Plaintiff felt increased pain in her shoulder and arm. *Id.* ¶¶ 30–31. It is undisputed that Plaintiff went to the ship's medical facility where she was treated for a shoulder dislocation. *See* Defendant's Reply [ECF No. 85 at 8] ("[Defendant] does not contest that Plaintiff suffered a shoulder dislocation for which she was treated for onboard.").

Over 300,000 guests have booked the iFly activity on Defendant's ships since it first became available. Def. SOMF ¶ 33. The record reflects three different incidents involving passengers purportedly suffering shoulder injuries after participating in an iFly activity. For the first incident, Defendant received a letter from an attorney alleging that a passenger suffered a shoulder separation due to a crewmember pulling on the passenger's arm during the iFly activity on February 19, 2016, on the *Anthem of the Seas*. Pl. SOMF ¶ 34; Campos Dep. pp. 95–102. The passenger did not report the incident while on the ship and, other than the letter from the attorney, the passenger never pursued a claim against Defendant. *Id.* For the second incident, a passenger allegedly dislocated his shoulder while being pulled by an instructor in the iFly on July 25, 2017, on Defendant's ship, the *Quantum of the Seas*. *Id.* p. 100–04. Defendant created a report for the

---

[1] It is undisputed that Xerez completed a month-long training to become a certified Level 1 iFly instructor. Def. SOMF ¶ 16. Plaintiff, however, disputes that Xerez received any additional training as required by iFly. Plaintiff's Statement of Material Facts ("Pl. SOMF") ¶ 17, [ECF No. 56].

incident, but the passenger did not pursue a claim against Defendant. *Id.* Xerez was not the instructor for the first two incidents. *Id.* During his deposition, Xerez testified about a third incident where a passenger injured his shoulder during an iFly activity where Xerez was the instructor. Xerez Dep. pp. 74–76. The passenger did not report his injury to Defendant and did not make a claim against Defendant.[2]

On October 4, 2018, Plaintiff filed this action alleging claims against Defendant for negligence (Count I) and vicarious liability (Count II) [ECF No. 1]. Plaintiff claims that Defendant and Xerez owed her a duty to exercise reasonable care and that this duty was breached when Xerez pulled her arm with unnecessary force during her iFly activity. Defendant moved for summary judgment arguing (1) Plaintiff failed to prove Defendant was on notice of the alleged risk-creating condition; (2) to the extent Plaintiff's injury was caused by the iFly, the danger was open and obvious; and (3) Plaintiff cannot prove that Xerez's pulling on her arm caused injury.

## DISCUSSION

### I. Summary Judgment

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curium) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a

---

[2] Defendant contends that the record is unclear as to whether the third incident occurred prior to Plaintiff's incident. However, in response to a question of whether there was a "guest who had an injury while [he was] the instructor, before Ms. Taylor's claiming she was injured" Xerez testified "[w]ell, actually, I had one . . . ." Xerez Dep. p. 74, 14-22.

3

reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

## II. Negligence

To prevail on her claims,[3] Plaintiff must show that (1) Defendant had a duty to protect her from a particular injury; (2) Defendant breached that duty; (3) the breach actually and proximately caused her injury; and (4) Plaintiff suffered actual harm. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014). "The failure to show sufficient evidence of each element is fatal to a plaintiff's negligence cause of action." *Taiariol v. MSC Crociere, S.A.*, No. 15-61131, 2016 WL 1428942, at *3 (S.D. Fla. Apr. 12, 2016), *aff'd* 677 F. App'x 599 (11th Cir. 2017) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006).

### A. Notice

Defendant argues that Plaintiff fails to establish that it was on notice of the alleged risk-creating condition. The Court disagrees.

---

[3] Plaintiff's claim for vicarious liability (Count II) is necessarily dependent on a finding of negligence.

4

"Pursuant to federal maritime law, the duty of care that cruise operators owe passengers is ordinary reasonable care under the circumstances, 'which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition.'" *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1350–51 (S.D. Fla. 2016) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)). Summary judgment is appropriate "when a plaintiff fails to adduce evidence on the issue of notice." *Taiariol*, 2016 WL 1428942, at *4 (citing *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1324 (S.D. Fla. 2015) ("Because Plaintiff has failed to cite any evidence in the record showing that [Defendant] had actual or constructive notice of the risk-creating condition alleged in the complaint . . . summary judgment in favor of [Defendant] is appropriate in this matter."))._[4]_

Plaintiff can establish notice by showing that Defendant knew about or had constructive notice of the purported risk-creating condition. *Sutton v. Royal Caribbean Cruises, Ltd.*, 774 F. App'x 508, 511 (11th Cir. 2019). Plaintiff may show constructive notice by submitting evidence (1) that the risk-creating condition "existed for a sufficient period of time to invite corrective measures" or (2) "of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior incident." *Id.* (internal citations and quotations omitted). For a prior incident to be substantially similar, "'[t]he conditions surrounding the . . . incidents' need only be 'similar enough to allow . . . a reasonable inference concerning [Defendant's] ability to foresee this type of [accident] and its results.'" *Williford v. Carnival Corp.*,

---

[4] Plaintiff contends that notice is not a prerequisite to liability in cruise ship cases where the defendant created the risk-creating condition. Not so. "The Eleventh Circuit has held that actual or constructive notice of the risk-creating condition is a prerequisite to imposing liability, regardless of a defendant's creation of the risk-creating condition." *Yusko v. NCL*, No. 19-cv-20479-KMM, 2020 WL 34644, at *4 (S.D. Fla. Jan. 3, 2020) (holding that there must be evidence in the record that a defendant had actual or constructive notice of the dangerous condition regardless of whether the defendant's direct action may have caused the plaintiff's injury). *See also Krug v. Celebrity Cruises, Inc.*, No. 16-22810-CIV-Scola, 2017 WL 4277165, at *2 (S.D. Fla. Sep. 25, 2017) (holding that requirement that a defendant have actual or constructive notice of the risk-creating condition "applies even where the defendant created the risk-creating condition").

No. 17-21922-CIV-Cooke, 2019 WL 6250824, at * 3 (S.D. Fla. Nov. 22, 2019) (quoting *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1280 (11th Cir. 2015)). "The substantial similarity doctrine does not require identical circumstances." *Sorrels*, 796 F.3d at 1287.

Here, the record reflects three prior incidents where passengers on Defendant's ships reported shoulder injuries related to their iFly activity. The Court finds that the incidents are substantially similar to the conditions surrounding Plaintiff's injury. Indeed, each of these incidents involved the same iFly activity and the passengers all had an instructor. This is enough to create a genuine issue of material fact as to whether Defendant had constructive notice of the risk-creating condition.

### B. Open and Obvious

Defendant also argues that, to the extent Plaintiff claims her injury was only caused by participating in the iFly, such a danger was open and obvious.[5] The Court disagrees.

A cruise ship only has a duty to warn of dangers that are not open and obvious. *Krug v. Celebrity Cruises*, 745 F. App'x 863, 866 (11th Cir. 2018). "An open and obvious condition is one that should be obvious by the ordinary use of one's senses." *Id.* Whether a danger is open and obvious is determined from an objective, rather than a subjective, point of view. *Id.* "[C]ourts have . . . held that a dangerous condition is not open and obvious where a reasonable person may be aware of the dangerous condition, but the extent of the danger is unreasonable or unforeseeable." *Yusko v. NCL*, No. 19-cv-20479, 2020 WL 34644, at * 4 (S.D.Fla. Jan. 3, 2020) (citing cases). In *Yusko*, the plaintiff alleged that she was injured when her dance partner—a professional dancer employed by the defendant cruise line—danced with her in a manner that caused her to fall. *Id.*

---

[5] Because the Court finds that the risk of Plaintiff having her shoulder dislocated by an iFly instructor during a flight is not open and obvious, it does not address Plaintiff's argument that an open and obvious analysis is not required in this case.

The court found that while "[g]enerally, falling while dancing with a partner is the type of danger that is open and obvious to a reasonable person," *id.* at 4, there was a genuine issue of material fact as to whether the employee's "manner of dancing was unreasonable or unforeseeable to the reasonable person." *Id.* at 4. Here, the risk of being touched by an instructor or falling in the iFly tube might be open and obvious, but there is a genuine issue of material fact as to whether the manner and force used by Xerez to pull Plaintiff's left arm in the tube was unreasonable or unforeseeable and therefore not an open and obvious risk. *See id.*

### C. Causation

It is undisputed that Plaintiff suffered a shoulder dislocation while on Defendant's ship. Defendant, however, contends that Plaintiff has not proffered sufficient evidence to establish that her shoulder dislocation was caused by Xerez pulling her arm in the iFly tunnel as opposed to some other event that happened after the flight. The Court disagrees.

Defendant argues that because Plaintiff's causation expert, Dr. Freeman, is not a medical doctor, he cannot opine on medical causation. In cases where injuries are not "readily observable or susceptible to evaluation by lay persons," expert testimony is required to establish medical causation. *Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1286 (S.D. Fla. 2019). Here, there is no dispute that Plaintiff suffered a shoulder dislocation—often a readily observable injury. Moreover, Magistrate Judge Otazo-Reyes already held that (1) Dr. Freeman is qualified to render a causation opinion in this case, (2) his causation methodology is reliable and generally accepted in medicine and epidemiology, and (3) his opinion would be helpful to the factfinder in this case. [ECF No. 93]. Dr. Freeman's opinion that Plaintiff's shoulder dislocation was caused by the

manner in which Xerez handled her arm during the iFly activity creates a genuine issue of material fact as to causation for the jury to decide.[6]

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of February, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[6] Defendant also argues that Plaintiff impermissibly stacks inferences to show causation, citing to this Court's Order in *Tonelli v. NCL (Bahamas) Ltd.,* No. 17-cv-23313-Gayles, 2019 WL 935384 (S.D. Fla. Feb 26, 2019). The Court disagrees. In *Tonelli*, the Court held that the plaintiff's theory as to causation, based on an expert's report that failed to consider other potential causes of the infant plaintiff's salmonella poisoning, to be speculative. *Id.* Not so here. Plaintiff has testified as to when her injuries began, there is video evidence in the record showing Xerez holding Plaintiff's arm during the iFly activity, and Dr. Freeman opined that Plaintiff's injury was caused by Xerez pulling her arm. This action is simply not comparable to *Tonelli* where the plaintiff's expert opined that she contracted salmonella from a baby pool despite having been in multiple other locations over the course of several days where she could have contracted the illness.